HIATT, *Respondent,*
*v.*
CONGOLEUM INDUSTRIES, INC., *Appellant.*
(No. 73-4709, SC 24497)

569 P2d 567

Graham M. Hicks, Portland, argued the cause for appellant. With him on the brief were Miller, Anderson, Nash, Yerke & Wiener and Richard A. Edwards, Portland.

Lee Omlid, Eugene, argued the cause for respondent. On the brief was Larry J. Anderson, of Anderson & Richmond, Eugene.

Before Denecke, Chief Justice, Bryson, Linde, Justices and Davis, Justice Pro Tempore.

DENECKE, C. J.

**DENECKE, C. J.**

Plaintiff brought this action alleging that floor covering he purchased did not properly adhere to the floor and plaintiff was required to replace it, to his damage. Plaintiff named as defendants Congoleum Industries, the manufacturer, Wanke Panel Co., the distributor, and K. D. L. Investment Co., the seller and installer. Wanke's demurrer was sustained and the case against it was dismissed. The jury returned a verdict in favor of KDL. A default judgment was entered against Congoleum, the trial court denied Congoleum's motion to set aside the default judgment, and Congoleum appeals. We reverse.

■ Congoleum asserts that the default against it must be set aside and judgment entered in its favor upon the reasoning stated in *State ex rel Everett v. Sanders*, 274 Or 75, 78, 544 P2d 1043 (1976). *Accord, Jones v. Jones*, 276 Or 1125, 1133, 557 P2d 239 (1976). We held in those cases that where an action is brought against several defendants and an appearing defendant asserts a defense common to the other defendants, this defense, if successful, inures to the benefit of defaulting defendants. The result, then, is that final judgment must be entered in favor of the defaulting defendants.

The initial complaint alleged in the first cause of action that all the defendants were negligent. The second cause of action alleged that KDL breached an implied warranty and the third cause alleged KDL breached an express warranty. Wanke demurred upon the ground the complaint improperly united several causes of action; that is, the second and third causes of action were directed only at KDL and were based upon a transaction solely between plaintiff and KDL which was not the same transaction as that alleged in the first cause of action. The demurrer was sustained.

The sustaining of Wanke's demurrer does not afford a basis for setting aside the default against

Congoleum. The principle of *State ex rel Everett v. Sanders, supra* (274 Or 75), is that the successful defense of one defendant inures to the benefit of a defaulting defendant only if the defense "goes to the whole right of the plaintiff to recover at all." *State ex rel Everett v. Sanders, supra* (274 Or at 78), quoting from *Bronn v. Soules,* 140 Or 308, 313, 11 P2d 284, 13 P2d 623 (1932). Wanke's defense was not of this kind. Its defense did not go to the merit of plaintiff's claim and if the defense had not been raised by demurrer it would have been waived. ORS 16.330.

Congoleum also contends that under the principle of *State ex rel Everett v. Sanders, supra* (274 Or 75), the defendant's verdict entered for KDL requires that the court set aside the default against Congoleum.

■ In *State ex rel Everett v. Sanders, supra* (274 Or at 81), we stated that if the defaulting defendant "occupied exactly the same legal position as did the * * * [successful] defendants" the default must be set aside. For this case the principle perhaps can be more clearly stated, — if the ground upon which the successful defendant prevailed would necessarily have caused the defaulting defendant to have prevailed, the default must be set aside.

■ To make this determination the pleadings in plaintiff versus KDL and plaintiff versus Congoleum must be examined. Plaintiff proceeded against KDL first on the theory of a warranty of implied fitness for a particular purpose and, second, on an express warranty. Both alleged warranties were that the floor covering was suitable and would adhere to a concrete surface. KDL alleged as an affirmative defense that plaintiff knew and was advised of the quality and properties of the floor covering purchased and knowingly made all decisions regarding the material to be purchased. KDL also alleged as an affirmative defense that plaintiff failed to give reasonable notice of a breach of warranty.

Plaintiff alleged against Congoleum that it negli-

gently failed to supply instructions to Wanke to enable it to notify KDL that the floor covering was not suitable for use upon concrete. Plaintiff further alleged that Congoleum negligently failed to supply instructions to enable prospective customers to determine the proper use of this particular floor covering.

There was a general verdict in favor of KDL. The jury may have decided that there was a breach of warranty but that plaintiff failed to give reasonable notice. The jury may have found that KDL made no express or implied warranties or it may have found KDL had no way of knowing how the floor covering was to be used. We cannot find that because the jury found for KDL it necessarily would have found for Congoleum. Therefore, we cannot conclude that the default judgment against Congoleum must be set aside because of the jury verdict in favor of KDL.

Congoleum further contends that if it is not entitled to have the default judgment set aside and judgment entered in its favor, it is entitled to have the default judgment set aside, to file a responsive pleading, and to have a trial on the merits. Congoleum argues it is entitled to such relief because the default judgment was taken against it through "mistake, inadvertence, surprise or excusable neglect." ORS 18.160.

Plaintiff duly served Congoleum by personally serving the Corporation Commissioner and sending copies to Congoleum's office in New Jersey by certified mail. The certified letter was received and signed for by J. Fridy, an employee of Congoleum, on November 14, 1973. Congoleum made no appearance and did not ask for any extension of time within which to appear. In September 1974 plaintiff took an order of default against Congoleum. Immediately after the verdict was entered in favor of KDL plaintiff obtained a default judgment against Congoleum on January 22, 1976.

On February 2, 1976, Congoleum's legal department in New Jersey received a letter from plaintiff's

[ 573 ]

attorney enclosing a copy of the default judgment and demanding payment. On February 19, 1976, Oregon attorneys, on behalf of Congoleum, filed a motion to set aside the default judgment. Affidavits were filed in support of the motion. In April the trial court denied the motion. The order states no findings, conclusions or reasons. The comments of the trial court during argument on the motion do not indicate on what ground it made its ruling.

The affidavits stated the following: J. Fridy retired from Congoleum in 1973 after 45 years of service with Congoleum. He had been mail supervisor and since retirement had occasionally worked in a relief capacity in the mailroom. His instructions were to forward any legal document to the legal department and it was his practice to do so. He was working in the mailroom when the postoffice records state the complaint in plaintiff's action was received, but he has no recollection of receiving it or any other like document.

A member of the legal department of Congoleum stated that he investigated in the legal department and other departments. No one in Congoleum had any knowledge of the lawsuit until he received the copy of the default judgment by mail from plaintiff's attorney. At that time he replied to plaintiff's attorney and turned the case over to the Oregon attorneys who subsequently filed the motion to set aside the default.

ORS 18.160 provides that the court "may, in its discretion, set aside a default taken against him" through his mistake, inadvertence, surprise or excusable neglect."

The phrase in the statute, "in its discretion," is troublesome. That phrase has been part of the Oregon law since Deady's Civil Code, ch 1, § 100. Statutes of other states frequently also contain the term, "in its discretion." 1 Freeman, Judgments (5th ed), 573, § 290. Freeman writes:

> "Under the uniform construction given to these statutes, the signification of the words 'at its discretion,'

used in them, has been materially limited. The 'discretion' here referred to is not 'the power of acting without other control than one's own judgment.' 'It is not a mental discretion, to be exercised ex gratia, but is a legal discretion to be exercised in conformity to law." 1 Freeman, *supra,* at 576, § 291.

We have stated the same principle. In *Wagar v. Prudential Ins. Co.,* 276 Or 827, 833, 556 P2d 658 (1976), we quoted from an earlier case: " 'True, the grant of such relief rests within the discretion of the court, but the discretion here spoken of is an 'impartial discretion, guided and controlled in its exercise by fixed legal principles;' * * *." *Thompson v. Connell,* 31 Or 231, 48 P 467, 65 Am St Rep 818 (1897).

In *Washington County v. Clark,* 276 Or 33, 38, 554 P2d 163 (1976), in reversing an order denying a motion to vacate a default judgment, we quoted from *Coleman v. Meyer,* 261 Or 129, 134, 493 P2d 48 (1972):

"Our decision is in accordance with the further principle: '* * * [T]he court's discretion is controlled by fixed legal principles and must not be exercised arbitrarily, but, rather, it should be exercised to conform with the spirit of the statute and not to defeat the ends of substantial justice."

Our recent decisions illustrate some of the "fixed legal principles" governing the trial court's discretion in passing upon motions to set aside default judgments.

■ If the facts are in dispute the trial court's view of what occurred will be accepted by this court. We accept the trial court's findings although the evidence is generally presented by affidavit.

For example, in *Burke v. Rachau,* 262 Or 323, 497 P2d 1154 (1972), an attorney for plaintiff stated in his affidavit that he granted the insurance adjuster until December 19th to appear. The adjuster stated in his affidavit that the attorney gave him an unlimited extension of time within which to appear. A default was taken the following February. We held the trial

[ 575 ]

court could find that the extension was limited to December 19 and a default taken thereafter was not taken because of excusable neglect.

*Coleman v. Myers, supra* (261 Or 129), further illustrates this principle. That case also points out that even if the statements in an affidavit are uncontradicted, the trial court does not always have to accept the truth of such statements. If grounds are apparent which could cause the trial court to suspect the uncontradicted statements in the affidavit, the trial court does not need to accept such statements as correct.

Some of our recent cases do not involve issues of fact but fall into a different category.

"Excusable neglect" is a concept like "due care" and even when the facts are not in dispute, an appellate court allots the task of determining whether an appearance was not made due to "excusable neglect" to the trial court. An appellate court will not reverse such a determination unless it concludes that such a determination is unreasonable. If the appellate court reverses the trial court, it necessarily decides the issue as a matter of law. When the appellate court reverses the appellate court uses the terminology that the trial court "abused its discretion."

*Rogue Val. Mem. Hosp. v. Salem Ins.,* 265 Or 603, 510 P2d 845 (1973), and *Wagar v. Prudential Ins. Co., supra* (276 Or 827), illustrate when this court considers the issue of excusable neglect within the trial court's ambit and when this court is of the opinion it is a matter of law.

In *Rogue Val. Mem. Hosp. v. Salem Ins., supra* (265 Or 603), the defendant Oetinger was agent for the defendant insurance company. Oetinger was served July 24th. He made no appearance. His affidavit states he sent the summons and complaint to the insurance company. In September plaintiff's attorney told Oetinger he had secured a default judgment

[ 576 ]

against him. Not until December did Oetinger file a motion to set aside the judgment. The trial court found Oetinger's conduct was not excusable neglect and refused to set aside the default judgment. We were of the opinion that the trial court's decision was within the ambit of its authority and affirmed.

In *Wagar v. Prudential Ins. Co., supra* (276 Or 827), the registered agent in Oregon for the defendant testified he sent by regular mail the summons and complaint served on him to the defendant's legal department in Los Angeles. This was a practice of many years. There was evidence the documents were never received, no appearance was made and a default was taken. The trial court refused to set the judgment aside, holding the use of regular mail was negligence of an extreme nature. We reversed, holding that the defendant's conduct was excusable neglect. In other words, we held as a matter of law the defendant's conduct constituted excusable neglect.[1]

■ In the present case the only evidence is that the summons and complaint were received by a part-time employee who had no memory of the incident. His instructions were to send such documents to the legal department and it was his practice to do so. For reasons not known, the documents were not received by the legal department. There is nothing implausible about such evidence. We regard these facts as amounting to a case of excusable neglect as a matter of law and reverse the trial court.

---

[1] In *St. Arnold v. Star Expansion Ind.,* 268 Or 640, 521 P2d 526, 522 P2d 477 (1974), the defendant and the insurance company waited over three months after being notified of the default to file any motions. The trial court held this was not an exercise of reasonable diligence and we held such a finding was within the authority of the trial court.

In *Bella v. Aurora Air, Inc.,* 279 Or 13, 16-17, 566 P2d 489 (1977), we stated that unavoidable delay and due diligence were not made out merely because the complaint and summons were given to defendants' insurance broker and channeled through several offices to the insurer's claims office, since it was the defendants that were summoned, not their insurance carrier. Nevertheless we held it within the trial court's discretion to set aside a default judgment against defendants when the motion to set aside was made as quickly as possible and no prejudice to plaintiffs had occurred.

The plaintiff relies upon *Lowe v. Institutional Investors Trust,* 270 Or 814, 529 P2d 920 (1974). There, the defendant corporation, a lender, was personally served in New York City in an Oregon mortgage foreclosure suit. Personal service was made on an assistant to the executive vice president. He stated in an affidavit that he routinely forwarded litigation documents served upon him to the legal department with an explanation memorandum, placing a copy of the memorandum in his files; that he had no recollection of service and he had looked in the corporate files, including the files in his office, and found no record of the service.

We held the trial court acted within its authority in finding that the corporation's conduct was inexcusable neglect.

The present case has similarities to *Lowe*; however, we conclude it is significantly different so as to require a result contrary to *Lowe.*

*Lowe* involved personal service, an event of greater impact than the receipt of a letter containing a summons and complaint in a mail room. The personal service was made upon an officer of the corporation who was assigned the duty of acting as the corporate agent to receive service.

We concluded in *Lowe* that a trial court could reasonably find that it was inexcusable negligence for a corporate agent for service to have lost and have no memory or record of a summons and complaint personally served upon him. We conclude that is not comparable to having the contents of a letter lost between the mail room and the corporate legal room and the employee of the mail room having no memory of receiving or transmitting the letter or its contents. *Wagar v. Prudential Ins. Co., supra* (276 Or 827), supports this conclusion. In *Wagar,* as in the present case, the letter containing the summons and complaint never reached the defendant's law department. Why this occurred is unknown in both cases. In *Wagar* we

reversed a holding by the trial court that the default taken as a result of the disappearance of the letter was the result of inexcusable neglect.

■ As the statute provides and as we have held, mere negligence on the part of the party against whom a default was taken does not foreclose relief to the defaulted party; it is inexcusable negligence. *Peters v. Dietrich,* 145 Or 589, 593, 27 P2d 1015 (1934).[2]

In *Wagar v. Prudential Ins. Co., supra* (276 Or at 833), we reiterated the policy trial and appellate courts should follow in considering motions to set aside default judgments:

" 'Ordinarily, if he presents reasonable grounds excusing his default, the courts are liberal in granting relief, for the policy of the law is to afford a trial upon the merits when it can be done without doing violence to the statute and established rules of practice that have grown up promotive of the regular disposition of litigation.' "

Reversed and remanded.

---

[2]The defendant relies upon *Irwin v. Klamath County,* 110 Or 374, 378-381, 210 P 159, 223 P 736 (1924). The opinion in that case is not a satisfactory explanation of why this court reversed the trial court's refusal to set aside the default and, therefore, we decline to use it as a precedent.